**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Reza SEDIGH and William D. Brooks,**
**Defendants-Apellants.**

**No. 80–3822.**

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 9, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

John A. Shorter, Jr., Washington, D. C., for Sedigh.

Irwin Acker, Houston, Tex., for Brooks.

Harry P. Pastuszek, Jr., W. Glenn Burns, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, REAVLEY and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Reza Sedigh and William Brooks were convicted under 18 U.S.C. § 371 for conspiring to possess unregistered firearms in violation of sections 5812(b) and 5861(b) of the Gun Control Act of 1968, 26 U.S.C. § 5801 et seq. (1980). The convictions resulted from an undercover investigation by agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF), who posed as gun dealers offering to sell to appellants a large number of rifles, automatic weapons, and silencers.[1] These firearms were not registered as required by section 5812(a) of the Act. Appellants, however, never took possession of any firearms.

I.

The central issue presented in this appeal is whether, in a conspiracy trial under 26 U.S.C. §§ 5812(b) and 5861(b), the trial court may admit evidence of the absence of firearm registration when the defendant has not taken possession of any firearms. Appellants argue that evidence of nonregistration was irrelevant here because sections 5812(b) and 5861(b) prohibit only the possession of unregistered firearms; moreover, appellants claim that such evidence was prejudicial because it erroneously implied to the jury that appellants as potential transferees of firearms had a duty to register. We find, however, that the evidence of nonregistration was properly admitted, as will be shown below.

We agree with appellants that under the Gun Control Act the duty to register firearms lies with the transferor. "The transferor—not the transferee—does the registering." U. S. v. Freed, 401 U.S. 601, 605, 91 S.Ct. 1112, 1116, 28 L.Ed.2d 256 (1971); 26 U.S.C. § 5812(a). But the Act

---

1. Under the Gun Control Act, the term "firearm" includes machine guns and silencers, but not long rifles. 26 U.S.C. § 5845(a) (1980).

also makes it unlawful for the transferee to receive or possess an unregistered firearm, regardless of the transferee's knowledge of the registration requirement. "The Act requires no specific intent or knowledge that the [firearms] were unregistered"; it requires only that the transferee not receive or possess unregistered firearms. *U.S. v. Freed*, 401 U.S. at 607, 91 S.Ct. at 1117, 28 L.Ed.2d 256 (1971); 26 U.S.C. §§ 5812(b), 5861(b), 5861(d) (1980). Appellants were thus properly charged and convicted for conspiring to possess unregistered firearms, and not—as appellants' argument implies—for conspiring to fail to register firearms.[2] For this purpose, the evidence of nonregistration was neither irrelevant nor prejudicial.

2. It makes no difference here that appellants were charged with conspiracy rather than with substantive violations. As the Supreme Court noted in *Freed*, "[w]e need not decide whether a criminal conspiracy to do an act 'innocent in itself' and not known by the alleged conspirators to be prohibited must be actuated by some corrupt motive other than the intention to do the act which is prohibited and which is the object of the conspiracy. An agreement to acquire hand grenades [or, as in this case, machineguns and silencers] is hardly an agreement innocent in itself. Therefore what we have said of the substantive offense satisfies on these special facts the requirements for a conspiracy. . . ." *U. S. v. Freed*, 401 U.S. at 609 n.14, 91 S.Ct. at 1118 n.14, 28 L.Ed.2d 256 (1971).

3. The evidence of nonregistration came primarily from ATF agent Curtis Williams. After appellants' objections had been overruled, agent Williams answered the following questions:

Q. (By Mr. Pastuszek) Agent Williams, what steps, if any, did you take to determine if any of the defendants had obtained permission from the Secretary of the Treasury to obtain the types of firearms which were found in Government Exhibits 5A through 5L?

A. I made an inquiry to our headquarters records group in Washington, D. C., by submitting the names and various other descriptive data on the defendants to determine whether there was in fact a record in their name.

Q. And what was the result of your attempts to get information with respect to the defendants?

A. The response from our Washington branch was that none of the three defendants had any type of record whereas they had made application or received

First, evidence of nonregistration is both factually and materially relevant in a conspiracy charge under sections 5812(b) and 5861(b). The evidence of nonregistration offered in this case certainly tended to prove the fact of nonregistration.[3] And the fact of nonregistration is a material issue in establishing a conspiracy to possess unregistered firearms. Indeed, proof of nonregistration is essential: Section 5812(b) requires that "[t]he transferee of a firearm shall not take possession of the firearm unless the Secretary has approved the transfer and registration of the firearm as required by subsection (a) of this section." Section 5861(b) makes it unlawful for any person "to receive or possess a firearm transferred to him in violation of the provisions of this

permission to possess any of these types of firearms.

Transcript at 380–81. Agent Williams then identified the documents of certification that showed appellants' lack of permission to possess firearms:

Q. I now show you Government [Exhibits] 7A, B, and C, and ask you if you can identify that.

A. Yes, I can.

Q. How can you identify them, Agent Williams?

A. These are documents of certification, based on my request, to our records section in Washington, D. C. They were sent to me directly. I received them from Washington, D. C. after making the request for a records check in the name of Reza Sedigh, Michael Colton and William Brooks.

MR. PASTUSZEK: Okay. At this time, Your Honor, Government offers into evidence Government Exhibits 7A, 7B and 7C, and requests permission to publish them to the Jury.

Transcript at 381.

While these questions and answers were not the ideal manner in which to prove nonregistration, they did in fact tend to do so. The absence of appellants' names from the Treasury Department records could only occur if the firearms were not properly registered. *See* 26 U.S.C. § 5812(a) (1980) (requiring the registration application to identify the transferee and to include his fingerprints and his photograph). Of course, the firearms also were not registered under the transferor's name, since the transferor here was the ATF undercover agent. Thus, the evidence shows the firearms to be unregistered.

chapter." A conspiracy prosecution under these sections must therefore prove that the transferee conspired—intentionally agreed to join others in concerted effort—to receive or possess *unregistered* firearms. In short, nonregistration is an element of the crime.

Additionally, the evidence of nonregistration did not mislead the jury about the duty of registration, because the trial court properly instructed the jury on the law to be applied:

> To establish the offense with which the defendants are charged, there are two essential elements which the Government must prove beyond a reasonable doubt. First: The defendants at the time and place charged in the indictment knowingly conspired to receive or possess a machine gun or a silencer; and
>
> Second: The machine gun or silencer intended to be received or possessed was not to be transferred and registered with the approval of the Secretary of the Treasury.

Transcript at 649. Using this explanation of the law, the jury could not convict appellants simply for failing to register the firearms. The trial court clearly required the jury to find a conspiracy to possess unregistered firearms. Indeed, the trial court's instructions on specific intent presented a legal standard more favorable to appellants than the standard established by the Gun Control Act: the trial court required "proof beyond a reasonable doubt that a defendant had knowledge that the firearms had not been properly registered," Transcript at 651, while "[t]he Act requires no specific intent or knowledge that the [firearms] were unregistered," *U. S. v. Freed*, 401 U.S. at 607, 91 S.Ct. at 1117, 28 L.Ed.2d 256 (1971). In light of these instructions, the evidence of nonregistration cannot be viewed as prejudicial or misleading.

The instructions also cured any possible confusion caused by the trial judge's comment upon the evidence of nonregistration. During the discussion of appellants' objections to this evidence, the trial judge said: "Whether or not they did [have permission from the Secretary of the Treasury] or not is the ultimate issue involved in this lawsuit, in the Government's case." Record at 374. Of course, nonregistration was a crucial issue; in some sense it may have been the ultimate issue. Nevertheless, at the close of evidence the trial court properly instructed the jury to disregard his comments upon the issues or evidence:

> Do not assume from anything I have said or done that I have any opinion concerning any of the issues in this case. Except for my instructions on the law, you should disregard anything I may have said or done during the trial in arriving at your own findings as to the facts.

Transcript at 640. This instruction, combined with the trial court's accurate statement of the applicable law, prevented the jury from placing undue emphasis on nonregistration alone.

Thus, because the evidence of nonregistration was both relevant and not prejudicial, it was properly admitted under the Federal Rules of Evidence. Fed.R.Evid. 401, 402, 403.

## II.

Appellants also argue that the trial court erred in its handling of a jury misconduct allegation. At the end of trial, the trial court received an affidavit from Mrs. William Brooks, the wife of appellant Brooks, swearing that an anonymous telephone caller had told her that the Marshal in charge of the jury had informed two jurors of appellant Brooks' prior conviction for conspiracy.[4] The trial court held an *in camera*

---

4. Mrs. Brooks' statement read as follows:
   After the trial was over, my husband and I returned to the St. Charles Hotel on St. Charles Avenue, where we were staying while in New Orleans. Between 8:30 p.m. and 9:00 p.m., approximately, the telephone rang in our room which was Room 412. I

answered it and a woman asked if I was Mrs. Brooks. I answered yes and she said I am a concerned person (or party) and there is something you people need to know. She then said the Marshall told two of the Jurors that Mr. Brooks had had a previous conviction of conspiracy and was found guilty. She

hearing in which it determined that no basis existed for any further investigation. Appellants claim that the trial court should have conducted a full jury investigation to ensure that the alleged extrinsic evidence did not influence the jury. We disagree.

■■ The trial court's duty in deciding a motion for new trial when jury misconduct is alleged must be judged on the peculiar facts and circumstances of each case. *U. S. v. McKinney*, 434 F.2d 831, 833 (5th Cir. 1970). And the trial court's decision will be reversed only upon a showing of an abuse of discretion. *U. S. v. Chiantese*, 582 F.2d 974, 978 (5th Cir. 1978), cert. denied, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979).

■ Of course, the trial court must begin with the presumption that the jury is impartial. Upon receiving a colorable claim of extrinsic influence on that impartiality, the trial court should investigate the asserted impropriety to determine initially if and what extrinsic factual matter was disclosed to the jury. *U. S. v. Winkle*, 587 F.2d 705, 714 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). Here, the trial court actually held a hearing to question under oath Mrs. Brooks and the two Deputy Marshals in charge of the jury. Mrs. Brooks simply repeated her affidavit, and the Deputy Marshals flatly denied the allegations. In short, appellants failed to prove even the existence of a jury breach. Under these circumstances—when the allegations remain speculative—the trial court need not inquire further. *See U. S. v. Howard*, 506 F.2d 865, 868–69 (5th Cir. 1975). It was thus not an abuse of discretion here to refuse to conduct a full jury investigation.

### III.

■ In closing argument, the government remarked that appellants had admitted committing the crime by pleading entrapment.[5] Appellants claim that this was a misstatement of law sufficient to support their motion for mistrial. We find, however, that the trial court properly denied the motion for mistrial, because the government's argument caused no prejudice.

First, the trial court gave a contemporaneous curative instruction to the jury:

> The Court instructs you at this time to erase from your memory any inference or reference that anyone in this case has confessed guilt. Guilt is something which the Government is required to prove beyond a reasonable doubt. You are, therefore, to enter the Jury room with the facts as you've heard them, the evidence as you have heard it, the Court's instructions as I will give them to you. You're entitled to listen to the arguments of counsel, but the presumption of innocence goes into that Jury room with you, and you have to understand that it's the Government's duty to prove these defendants guilty beyond a reasonable doubt of the crime charged. You are, therefore, to ignore and strike from your minds any statement or inference that anyone in this case has confessed guilt.

Transcript at 630. This instruction emphatically removed the possibility of prejudicial inference from the government's remark, and, more importantly, it reinforced the appellants' presumption of innocence. Any potential harm to appellants was simply not allowed to materialize.

■ Moreover, the government's remark did not seriously misstate the law. The general rule of this Circuit is that a defendant cannot both plead entrapment and deny committing the acts on which the prosecu-

then hung up the phone before I could say anything. That was the extent of the phone call. To my knowledge, I had never heard her voice before.
Brief of Appellant Brooks, at 10.

5. Transcript at 629. The government remark was a rebuttal to appellants' own arguments on entrapment. Counsel for appellant Brooks and

for codefendant Michael Colton both discussed entrapment in their closing arguments. Transcript at 601, 613, 626. Appellant Sedigh adopted the arguments of his codefendants. Transcript at 588. And the trial court later instructed the jury on the defense of entrapment. Transcript at 652–53.

tion is predicated. *U. S. v. Brooks*, 611 F.2d 614, 618 (5th Cir. 1980). Of course, this is not an inflexible rule, and it is not equivalent to a confession of guilt. But the government's remark was a reasonable, if simple, statement of the general rule. And the trial court's accurate jury instruction on entrapment, Transcript at 652–53, presented the jury with the full law of entrapment, thus ensuring that the government's remark did not create any misunderstanding. The trial court, therefore, did not commit reversible error by refusing to grant a mistrial.

### IV.

██ Finally, appellants challenge the sufficiency of the evidence to support their convictions. We reject this claim.

The facts adduced at trial show beyond doubt that on several occasions appellants attempted to gain immediate possession of firearms that were not registered. At the October 31 meeting in New York City, both appellants sought to obtain the two machineguns brought by ATF undercover agent W. Lloyd Grafton as display weapons. Transcript at 64–66, 81, 143. In a November 2 telephone conversation, codefendant Colton advised agent Grafton that appellant Sedigh wanted to get five weapons from Grafton at that time or when they met again. Transcript at 106. At the November 8 meeting in Fat City, appellant Sedigh offered to purchase several firearms with silencers. Transcript at 150–52. And at the November 28 meeting in Falls Church, both appellants attempted to obtain the display long rifle with its silencer. Transcript at 123–24. None of these firearms were registered. This evidence, viewed in a light most favorable to the government, leaves no reasonable doubt that appellants conspired to receive or possess unregistered firearms in violation of 26 U.S.C. §§ 5812(b) and 5861(b).

For the foregoing reasons, the district court decision is affirmed.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.