UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 00-50524
_____

FRED TOWNSEND,

Plaintiff-Appellant,

VERSUS

DAVID MOYA, Warden; MARK HILL, Lieutenant; WAYNE SCOTT, Executive
Director,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas

June 5, 2002

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:

After being cut with a knife by a prison guard, Fred Townsend
("Townsend"), an inmate of the Texas Department of Criminal Justice
("TDCJ"), filed a § 1983 suit against a guard, a prison warden, and
the executive director of the TDCJ.[1]  The district court granted
summary judgment to the defendants, and Townsend appeals. Because
there is no genuine issue of material fact concerning whether the
prison guard acted under color of state law, we AFFIRM.

_____

  [1] Townsend also filed criminal charges for aggravated assault in
state court.

FACTUAL AND PROCEDURAL BACKGROUND

Townsend was an inmate and a state-approved trusty and worked in the prison as a "kennelman" caring for the guards' tracking dogs. Defendant-Appellee Lieutenant Mark Hill ("Hill") was in charge of the guards who supervised the inmates working in the field. According to Townsend, every time Hill and Townsend interacted, they played "come on," and referred to each other as "my bitch" or "whore".

On July 23, 1996, Hill and Townsend began to play "come on". Townsend winked at Hill and said "I'll be your bitch," and then went into the kitchen to make a sandwich. Hill approached Townsend from behind with his pocketknife in hand, saying "I told you I was going to get you, whore." Townsend jumped, reached behind him, and realized he had been cut or stabbed on his buttocks. Hill laughed at what had happened, and offered to take Townsend to the infirmary. Townsend declined to go to the infirmary, and instead applied "horse liniment" to himself. Townsend filed a complaint with Internal Affairs. Hill was eventually terminated from TDCJ for his actions. Although Townsend brought criminal charges for aggravated assault against Hill, they were dropped for insufficient evidence.[2]

On May 21, 1998, Townsend, proceeding pro se and in forma

---

[2] The dissent accuses us of "misapprehending the relevant facts at issue". We respectfully disagree, and consider the dissent's rendition of the facts itself a mischaracterization.

pauperis ("IFP"), filed a civil rights complaint under 42 U.S.C. § 1983 against Wayne Scott ("Scott"), executive director of the TDCJ – Institutional Division; David Moya ("Moya"), warden of the Hughes Unit; and Hill.

The defendants moved to dismiss. As Townsend's claims against Moya and Scott were based solely on the doctrine of respondeat superior, and as such could not stand, the district court dismissed those claims, but allowed Townsend's suit against Hill to proceed. Hill filed a motion for summary judgment, arguing that he was not acting under color of state law when he cut Townsend, and that he was only joking and engaging in "horseplay" with him. The district judge granted Hill's motion, finding that Townsend and Hill were engaged in "horseplay" and that there was no evidence indicating that Hill had used or misused his authority to injure Townsend.

Townsend appealed and moved to proceed IFP on appeal. The district court denied Townsend's motion after certifying that the appeal was not taken in good faith. Townsend moved to proceed IFP in this court, and we granted Townsend's motion, finding that the appeal raised the nonfrivolous issue whether the district court erred in concluding that there was no genuine issue of material fact concerning whether Hill acted under color of state law. Thus, it is that issue that is before us today.

In granting Townsend's motion to proceed IFP, this court ordered the parties to address its decisions in Bennett v. Pippin, 74 F.3d 578 (5th Cir. 1996), Doe v. Rains County Indep. Sch. Dist.,

3

66 F.3d 1402 (5th Cir. 1995), and <u>Doe v. Taylor Indep. Sch. Dist.</u>, 15 F.3d 443 (5th Cir. 1994), which concerned, in part, the "color of state law" issue. Neither party has done so. Townsend has essentially submitted a verbatim copy of the brief filed in district court, and Hill has filed a pro se letter brief indicating that he considers this appeal to be frivolous.

DISCUSSION

The only issue before us is whether the district court erred in concluding that there was no genuine issue of material fact concerning whether Hill acted under color of state law. We review the district court's grant of summary judgment de novo. <u>Harris v. Rhodes</u>, 94 F.3d 196, 197 (5th Cir. 1996). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Moreover, the evidence must be considered in the light most favorable to the opposing party, who must be given the benefit of all inferences that might be reasonably drawn in his favor. <u>W.H. Scott Constr. Co., Inc. v. City of Jackson</u>, 199 F.3d 206, 211 (5th Cir. 1999).

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects or causes to be subjected any

4

person... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her constitutional rights." Doe, 15 F.3d at 452.

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Causey, 85 F.3d 407, 415 (5th Cir. 1999). That is, a defendant acts under color of state law if he "misuses or abuses his official power" and if "there is a nexus between the victim, the improper conduct, and [the defendant's] performance of official duties." Id. "If, [however,] a state officer pursues personal objectives without using or misusing the power granted to him by the state to achieve the personal aim, then he is not acting under color of state law." Harris v. Rhodes, 94 F.3d 196, 197 (5th Cir. 1996).

The district court found that the incident between Hill and Townsend was "horseplay," and, relying on Harris, concluded that Hill was pursuing a private aim and not acting by virtue of state authority. Dist. Ct. Op. at 3. The court concluded that because there was "nothing to indicate that Defendant in any other manner used or misused the authority he possessed in order to cause any injury to Plaintiff," Hill's action was not under color of state

5

law. Id. at 3-4.

We agree. There is no genuine issue of material fact concerning whether Hill's actions were horseplay, and therefore not under color of state law. In Harris, an inmate filed a § 1983 claim against a maintenance worker at the jail where he was incarcerated, claiming his constitutional rights were violated when, while joking around together, the maintenance worker punched him. The inmate and maintenance worker had been teasing each other about physical attributes, which led to the physical reaction. The maintenance worker did not use his authority to sign out the inmate for work details in order to engage in the altercation. We affirmed the district court's grant of summary judgment to the maintenance worker, concluding that his actions were not under color of state law, as they were mere horseplay, which involves a "purely private aim and no misuse of state authority," and is therefore not action under color of state law. Harris, 94 F.3d at 197.

The same is true here. Neither party contests the district court's factual finding that the parties were engaged in horseplay when the cut occurred. They were calling each other names, a "purely private aim," and a physical reaction ensued. We accept the undisputed finding that this was a case of horseplay, and therefore affirm the grant of summary judgment.[3]

---

[3] Following the dissent's approach accurately and analyzing this case under Causey, rather than Harris, brings us to the same result. Causey requires a nexus between the victim, the conduct and performance of official duties. See 85 F.3d at 415. No such nexus

6

Our dissenting colleague Judge Dennis argues that the case at bar is distinguishable from Harris, because there the defendant did not clearly have direct authority over the plaintiff, unlike here. Moreover, there the defendant used a personal means (his fist) to resolve a dispute, whereas here, Hill resolved his problem with a knife he possessed by virtue of his position and authority.

With all respect, those distinctions do not negate the applicability of Harris to the situation before us today. The key inquiry in determining whether Hill acted under color of state law is whether Hill had a "purely private aim". Whether using a fist or a knife, the answer remains that Hill and Townsend were joking about personal matters, as they often did, and that joking ended in a physical altercation. Moreover, that Hill *had* direct authority over Townsend does not imply that he *exercised* that authority during the altercation. The inquiry is not whether authority is possessed, but whether it is used or misused. Here, it was neither used nor misused, and therefore Hill did not act under color of state law.

The dissent analogizes this case to Bennett, Taylor, and Rains, arguing that there is a fact issue as to whether Hill abused his power as a prison guard to possess a knife and verbally abuse Townsend, which led to the stabbing. With all due respect, we find

_____

exists here, where Hill was not performing official duties and was pursuing entirely personal aims. Hill not once exercised his authority in order to carry out his personal aims, and thus no nexus exists.

7

these cases inapposite, as none involves horseplay, which the district court found in a determination to which we must defer. These cases are further distinguishable on the facts.

In Bennett, a sheriff, shortly after questioning a woman about her involvement in a shooting, raped her. A panel of this court upheld the district court's determination that this was action under color of state law. 74 F.3d at 589. The court relied on the facts that in response to the woman's refusals to have sex, the sheriff said "I can do what I want, I'm the Sheriff"; the sheriff used his authority to ascertain whether the woman's husband would be home the night of the rape; and the woman needed the sheriff's permission to retrieve her truck and change her place of residence. Id. There was also evidence that when the woman protested having sex, the sheriff told her that he could have thrown her in jail, an explicit exercise of his authority in order to induce her to have sex with him. Id. at 583. The decision in Bennett relied on explicit invocations of authority made by the sheriff. Hill made no such invocation or exercise of authority here, and thus the reasoning in Bennett does not extend to the case at bar.

We further find this case distinguishable from Taylor, which involved a § 1983 claim arising from a teacher's sexual abuse of a student. The teacher required the student to do little classwork, rewarded her with high grades, and asked other teachers to raise her grades in inducing her to have a sexual relationship with him. 15 F.3d at 447-52. This court sitting en banc found that the

8

teacher's actions were under color of state law, because his inappropriate actions were clearly connected to his duties and obligations as a teacher. That is entirely unlike the case at bar, where Hill's actions were purely personal and in no way related to his status as prison guard. Moreover, Hill never exercised any authority as a prison guard to cause the injury to Townsend.

Finally, the dissent misreads <u>Rains</u> as holding that a high school coach's sexual abuse of a student was action under color of state law. In fact, a panel of this court held there that a teacher's breach of her duty to report the coach's sexual abuse was not action under color of state law, because the teacher did not have a duty to exercise authority in controlling the events that produced the injury. 66 F.3d at 1416. This does not support the dissent's contention that Hill acted under color of state law.

## CONCLUSION

Because we conclude that there is no genuine issue of material fact concerning whether Hill and Townsend were engaged in horseplay, and therefore Hill's actions were not under color of state law, we AFFIRM.

DENNIS, Circuit Judge, dissenting:

Because the majority mischaracterizes both the law and the facts in this case, I respectfully dissent. The majority concludes that because Hill's actions constituted the "purely private aim" of "horseplay," there is no genuine issue of material fact that Hill did not act under color of state law. In my opinion, Hill's actions cannot be dismissively characterized as mere "horseplay." Hill clearly used his authority as a prison guard to accomplish his objectives -- albeit personal ones -- and therefore acted under color of state law. Consequently, I would reverse the district court's grant of summary judgment to Hill and remand this case for further proceedings.

As the majority properly notes, at the summary judgment stage, the evidence must be viewed in the light most favorable to the party opposing summary judgment, here, Townsend. W.H. Constr. Co., Inc. v. City of Jackson, 199 F.3d 206, 211 (5th Cir. 1999) (citing King v. Chide, 974 F.2d 653, 655-56 (5th Cir. 1992)). Townsend must likewise be given the benefit of all reasonable inferences that might be drawn in his favor. Id.

Nonetheless, the majority first falls into error by misapprehending the relevant facts at issue. The majority represents that the Hill and Townsend were both equally involved in horseplay and "were calling each other names." The facts in the record, however, reveal otherwise. That is, the record

10

demonstrates that Hill, a lieutenant who oversaw not only the inmates but also the other guards, had a history of "pull[ing] knives" on inmates, such as Townsend. Every time Hill saw Townsend, Hill would engage in "come on" by referring to Townsend as his "bitch" or "whore." Only when Townsend responded to Hill by saying, "I'll be your bitch," did Hill stab Townsend.

Although the majority attempts to characterize Hill's actions as a mere "physical reaction" to the horseplay, Hill's actions were much more methodical and calculating. After Townsend had responded to Hill's comment, Townsend went to the upstairs kitchen and opened the refrigerator to make himself a sandwich. Hill then stealthily approached Townsend from behind. With his pocketknife in hand, Hill stabbed Townsend and stated, "I told you I was going to get you, Whore."

Similarly, the majority states that after Hill stabbed Townsend, Townsend refused Hill's offer to be taken to the infirmary and instead applied "horse liniment" to himself. While the majority's statement is partially correct, it neglects crucial details. That is, after making his offer to take Townsend to the infirmary, Hill then realized that Townsend would have to fill out an incident report. Wanting to protect himself and his position as a lieutenant of the Hughes unit in which Townsend was a mere inmate, Hill told Townsend to lie and say he cut himself on a barbed wire fence. Only then did Townsend, not wanting to lie, decline Hill's offer and treat himself with "horse liniment," as he

11

had previously been instructed to do by another guard, Sergeant Williams. Furthermore, the majority fails to state that, after the incident, Hill sought to cover up his misdeeds by attempting to placate Townsend with a can of snuff, an item that the Texas Department of Criminal Justice no longer sold to inmates.

Second, the majority again errs by failing to do exactly what the district court and the parties failed to do -- discuss the relevant case law. Both the Supreme Court and this court, on several occasions, have addressed the color of state law issue. "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 49 (1988). That is, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classic, 313 U.S. 299, 326 (1941) (holding that election officials acted under color of state law when they, in the course of their official duties, willfully altered and falsely counted the ballots of voters in a primary election). "Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." Screws v. United States, 325 U.S. 91, 92-93 (1944). Although "acts of officers in the ambit of their personal pursuits are plainly excluded," id., this does not "mean that if officials act for purely personal reasons, they necessarily fail to act 'under color

12

of law.'" United State v. Tarpley, 945 F.2d 806, 809 (5th Cir. 1991). Rather, "individuals pursuing private aims *and* not acting by virtue of state authority are not acting under color of law purely because they are state officers."[4] Tarpley, 945 F.2d at 809 (internal citations omitted) (emphasis in original). For example, a police officer's purely private acts which are not furthered by his state authority, are not acts under color of state law. See, e.g., Delacambre v. Delacambre, 635 F.2d 407, 408 (5th Cir. 1981) (holding that a police chief was not acting under color of state law, even though he was on duty and at the police station, when he assaulted his sister-in-law over personal arguments about family matters).

In United States v. Causey, 185 F.3d 407, 411 (5th Cir. 1999),[5] this court set out a framework for determining whether a defendant's actions were "under color of law." The court first determined whether the officer misused or abused his power, and then examined whether there existed a "nexus" between the victim, the improper conduct, and the officer's performance of his official duties. Id. at 415. In Causey, this court found a police officer

---

[4] Despite the majority's contention, the "key inquiry" in determining whether Hill acted under color of law is not limited to ascertaining merely "whether Hill had a 'purely private aim.'" Maj. Op. at 7.

[5] Although this case actually involved a dispute under 18 U.S.C. § 242, "'[u]nder color' of law means the same thing in § 242 that it does in the civil counterpart of § 242, 42 U.S.C. § 1983." United States v. Price, 383 U.S. 787, 794 n.7 (1966).

to have acted under color of state law through his involvement in an execution-style murder of a citizen who filed an Internal Affairs complaint against him. The defendant's use of the police station, patrol car, and radio to plan, execute, and cover up the murder was sufficient to constitute misuse or abuse of official power. Id. at 415. Moreover, the nexus between the abuse and the crime was likewise satisfied by the defendant's unique position as a police officer to handle any evidence of the murder that might link the defendants to the crime and to offer protection to his co-conspirators from the consequences of the murder. Id.

Unfortunately, however, the majority overlooks the above framework and mistakenly limits its analysis to analogizing this case to Harris v. Rhodes, 94 F.3d 196 (5th Cir. 1996), despite the obvious factual differences. Harris involved an incident between an inmate, Harris, and a maintenance worker, Rhodes, at a Texas county jail. Harris, 94 F.3d at 197. After joking and making comments to each other, Rhodes became angry and punched Harris in the nose. Id. Although Harris filed a civil rights suit, his suit was dismissed on summary judgment because the men were engaged in horseplay that resulted in Rhodes hitting Harris. Id. This court stated that, regardless of whether Rhodes's conduct was intentional or accidental, Rhodes had not acted "under color of state law" when he hit Harris because "[i]t [wa]s apparent that the men were teasing each other regarding personal attributes. Rhodes reacted to the personal comment that Harris made about him. The

14

discussion involved purely personal matters. Rhodes chose to resolve this personal dispute through personal means -- punching Harris. Rhodes did not use or misuse the authority he possessed to sign out Harris for work details in order to accomplish the horseplay or to engage in the altercation." Id. at 197-98. In Harris, as in Delacambre, the court found no action under color of state law because the "state officer pursue[d] personal objectives without using or misusing the power granted to him by the state to achieve the personal aim," as "[b]oth the teasing and the punch were personal matters completely unrelated to Rhodes' authority granted by the state." Id. at 198 n.2.

Here, however, Hill did use his state authority to accomplish his personal objectives. First, in Harris, the "horseplay" resulting in the injury was clearly a consensual matter between the maintenance worker and the inmate. Here, however, Hill's state-granted authority over Townsend was much greater, as is evident by Townsend's reference to the guards as "bosses." Hill was a lieutenant in charge of other guards who supervised the inmates and thus clearly had direct authority over Townsend. Hill clearly abused his position and authority as a prison guard to verbally and physically assault and abuse Townsend. Townsend made this clear in his deposition: "I guarantee you, if I take that pen right there and one of them bosses come in here and I stick it into something like that there, you know what they going to do to me? They are going to beat me down so bad and try to bury me under this prison.

15

I guess it's all right for one of them to come up to me and do what they did – what happened, you know." The nexus between Hill's injurious conduct and his position as a prison guard is also clear. While the defendant in Harris used a personal means (i.e., punching) to resolve a dispute over a personal matter, Hill resolved his problem with a knife -- an implement he possessed by virtue of his position and authority. Even after the incident, Hill continued to wield his authority upon Townsend by ordering him to lie about how he was cut and by attempting to bribe him with snuff, a substance Townsend could not have gotten and something that Hill would have to procure for him by virtue of his position.[6]

Instead, Townsend's case is analogous to Doe v. Taylor Independent School District, 66 F.3d 1402, 1405 (5th Cir. 1995) (en banc), and Doe v. Rains County Independent School District, 66 F.3d 1402, 1405 (5th Cir. 1995), where this court stated that a teacher's abuse of his position to sexually abuse students falls under color of state law. In Taylor Independent School District, 15 F.3d at 452 n.4 (5th Cir. 1994), the defendant, as a teacher and coach, required the plaintiff to do little classwork, rewarded her with high grades, spoke with other teachers to raise her grades, purchased alcoholic beverages for her, and wrote love notes to her.

---

[6] As the majority correctly points out, the inquiry does not end after concluding that Hill possessed authority over Townsend; action under color of state law requires a finding that Hill used or *misused* his authority. For the foregoing reasons, this requirement is clearly met. See also infra pp. 9-10.

16

<u>Id.</u> at 447-52.  The defendant's actions eventually culminated in the two having sexual intercourse.  <u>Id.</u> at 448.  This court found a "real nexus" to exist between the conduct out of which the violation occurred and the defendant's duties and obligations as a teacher because he "took full advantage of his position as Doe's teacher and coach to seduce her."  <u>Id.</u>  As his inappropriate actions were clearly connected to his duties and obligations as a teacher, his conduct fell under the color of state law.  <u>Id.</u> at 452 n.4.

Likewise, in <u>Rains County Independent School District</u>, 66 F.3d at 1405, this court again addressed the color of state law issue in the context of sexual abuse of a high school student by a coach, who used his position and authority in school to develop a sexual relationship with a female student.  Although the defendant's sexual conduct and advances with the plaintiff began while she was babysitting for him at his home, the coach's conduct continued during school by means of inappropriate touching, gift giving, and the passing of notes.  <u>Id.</u> at 1407.  Although the court declined to find a third-party teacher liable under § 1983 for failing to report the coach's sexual abuse, the court did find it "appropriate to assume" that the plaintiff, in light of the above facts, had adequately alleged that the coach acted under color of state law in depriving the student of her right to bodily integrity.

Similarly, Hill abused his power in the prison as a guard to possess the knife, to stab Hill, and to verbally abuse Townsend.

17

As Townsend stated, Hill "loved to play come on" and state, "You my whore" and "Come here, bitch." Hill frequently played with knives and often pulled them on other inmates. When Townsend responded to Hill's insults, Hill stabbed him. As Hill used his position as a prison guard to gain access to Townsend and to possess the knife which he used to stab Townsend, the nexus[7] between Hill's abuse of power and his misconduct is clear. As in Taylor Independent School District and Rains County Independent School District, a "real nexus" exists here as Hill "took full advantage of his position as [a prison guard] to [abuse Townsend]." Furthermore, Hill's action went even further in his attempt to conceal his misconduct by ordering Townsend to lie about how he was cut and by offering to use his state-granted authority to buy Townsend snuff. Unlike in Harris, Hill's personal aims were pursued not by personal means but "by virtue of the power [he] possessed by state law" and were made possible because he was "clothed in the authority of the state." Causey, 185 F.3d at 415.

Given the majority's failures to glean properly the facts from the record and to discuss the relevant caselaw, it is not surprising that the majority reaches an erroneous conclusion. As

---

[7] Although other cases have found a nexus between the victim, the improper conduct, and the defendant's state-granted authority to be established by express invocations of the defendant's authority (i.e., "I can do what I want, I'm the Sheriff,"), see, e.g., Bennett v. Pippin, 74 F.3d 578, 589 (5th Cir. 1996); Tarpley, 945 F.2d at 809, such an invocation is unnecessary here to establish a nexus, given the context of Hill's action inside a prison while on duty as a prison guard.

18

is clear from Causey, Taylor Independent School District, and Rains Independent School District, Hill's use of his position and authority to abuse Townsend in conjunction with his continued efforts to use his position to hide evidence of his misconduct clearly constitutes action under color of state law. Therefore, I would reverse the district court's judgment and remand this case for further proceedings.