**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-2155**

---

TERRY W. GIVENS,

Plaintiff - Appellant,

versus

JOEY O'QUINN; R. BROOKS; BILL REYNOLDS; MIKE
MULLINS; CHARLES JANEWAY; FRANK WILKINS; TIM
YATES; STAN YOUNG; RICHARD YOUNG; RON
ANGELONE,

Defendants - Appellees,

and

JERRY O'QUINN,

Defendant.

---

Appeal from the United States District Court for the Western
District of Virginia, at Big Stone Gap. James P. Jones, District
Judge. (CA-02-214-2)

---

Argued: September 28, 2004          Decided: March 3, 2005

---

Before WILKINS, Chief Judge, and LUTTIG and GREGORY, Circuit
Judges.

---

Affirmed in part and reversed in part by unpublished per curiam
opinion. Judge Luttig wrote a separate opinion concurring in the
judgment. Chief Judge Wilkins wrote a separate opinion concurring
in the judgment in part and dissenting in part. Judge Gregory

wrote a separate opinion concurring in the judgment in part and dissenting in part.

--------

**ARGUED:** Daniel Robert Bieger, COPELAND & BIEGER, P.C., Abingdon, Virginia, for Appellant. Martha Murphey Parrish, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees R. Brooks, Bill Reynolds, Frank Wilkins, Tim Yates, Stan Young, Richard Young, and Ron Angelone; Harold Ronnie Montgomery, Jonesville, Virginia, for Appellee Charles Janeway. **ON BRIEF:** Hilary K. Johnson, Abingdon, Virginia, for Appellant. William W. Muse, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees R. Brooks, Bill Reynolds, Frank Wilkins, Tim Yates, Stan Young, Richard Young, and Ron Angelone.

--------

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM, announcing the judgment of the court:

The judgment of the district court is affirmed in part and reversed in part. The dismissal of counts I, II, III, and IV of the second amended complaint is reversed, and those claims are remanded to the district court for further proceedings. The dismissal of the retaliation claim set forth in the third amended complaint is affirmed.

This constitutes the opinion of the court.

LUTTIG, Circuit Judge, concurring in the judgment:

If, as we held in Rossignol v. Voorhaar, 316 F.3d 516 (4th Cir. 2003), it constituted state action for the deputy sheriffs to purchase the newspapers at issue in that case, then I believe it is inescapable that the conduct of defendants in this case constituted state action. No less so here than in Rossignol was the alleged constitutional injury facilitated by the defendants' official status. And, no less so here than in that case did the defendants' conduct "arise out of public, not personal, circumstances." Id. at 524. For this reason and this reason alone, I concur in the judgment of reversal as to appellant's claim that he was deprived of his constitutional rights under color of state law.

For the reasons stated by the district court, I would affirm its judgment as to appellant's retaliation claim.

WILKINS, Chief Judge, concurring in the judgment in part and dissenting in part:

Terry W. Givens, an employee of the Virginia Department of Corrections (DOC), was assaulted by two of his co-workers, Joey O'Quinn and Mike Mullins. He thereafter brought this action pursuant to 42 U.S.C.A. § 1983 (West 2003), alleging that the assault violated his constitutional rights in various ways. He also claimed that he was retaliated against for filing a grievance concerning the assault, in violation of his First Amendment rights. The district court dismissed all of these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, concluding as a matter of law that no state action was involved in the assault. I would affirm the judgment of the district court.

I.

The facts, viewed in the light most favorable to Givens, are as follows. At the time of the assault, Givens was employed as a corrections officer at Wallens Ridge, a supermaximum security prison. At approximately 3:00 a.m. on December 22, 2000, Givens entered an office during his shift to retrieve some paperwork. As he entered the office, fellow corrections officers O'Quinn and Mullins grabbed Givens and took him to an equipment room. Givens attempted to escape, but the employee who controlled the electronic door from a central workstation had been instructed not to open it. O'Quinn and Mullins put Givens in handcuffs and leg irons. They

5

then pulled down his pants, taped his genitals to his leg with duct tape, and photographed him. During the assault, Lieutenant Charles Janeway--O'Quinn and Mullins' supervisor and Givens' indirect supervisor--entered the room and observed what was happening but took no action.

O'Quinn and Mullins showed the photographs they had taken to other employees at Wallens Ridge. When the then-director of the DOC, Ronald Angelone, was informed of the occurrence, he ordered the pictures destroyed. Other people, including Stan Young (S. Young), warden of Wallens Ridge, and Richard Young (R. Young), regional director of the DOC, were involved in the cover-up.

At the time of the assault, Angelone, S. Young, and R. Young were aware that other assaults had occurred at Wallens Ridge, including (1) retaliating against a female employee who filed sexual harassment charges against the officer or officers who videotaped her using the restroom, (2) stripping and tying to a flagpole a corrections officer who was preparing to take military leave, and (3) forcing a corrections officer to perform a strip-tease under threat of termination. Victims of such assaults were aware that if they spoke out they would suffer retaliation.

Givens filed an incident report complaining about the assault with Major Tim Yates. Thereafter, Yates began an investigation of Givens in retaliation for Givens' filing of the report. The goal of this investigation was to find a basis for terminating him.

Since he filed the incident report, Givens also has been denied training opportunities, has been instructed to avoid contact with a female officer who filed a sexual harassment complaint against him,[1] and has lost time off as a result of changes in shift assignments.

In December 2002, Givens filed this action, naming O'Quinn, Mullins, Angelone, Janeway, S. Young, R. Young, Yates, and the female officer (collectively, "Appellees") as defendants. His second amended complaint alleged three claims under § 1983: unlawful seizure in violation of the Fourth Amendment, violation of procedural due process, and violation of substantive due process. It also alleged several state law claims.

Appellees moved to dismiss for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6). The district court dismissed the federal claims on the basis that O'Quinn and Mullins were not acting under color of state law when they assaulted Givens. Having dismissed the federal claims, the district court declined to exercise supplemental jurisdiction over several state law claims asserted by Givens, and dismissed them without prejudice.[2] See 28 U.S.C.A. § 1367(c)(3) (West 1993). In the course of its ruling, the district court noted that the

_____

[1]This complaint was found to be unsubstantiated.

[2]Givens does not appeal this aspect of the order of the district court.

7

complaint did not contain a claim for retaliation and that it seemed unlikely, in light of its holding that there had been no state action, that Givens could allege a valid retaliation claim. Nevertheless, the court allowed him ten days to file a third amended complaint stating a claim for retaliation.

After Givens filed his third amended complaint, Appellees again moved to dismiss, arguing that Givens had failed to state a claim for retaliation. Appellees argued, in relevant part, that Givens had not alleged the violation of a constitutional right because the assault had not been committed under color of state law, and thus his grievance was not a matter of public concern, as necessary for a retaliation claim under the First Amendment. The district court granted the motion to dismiss, stating simply that it agreed with Appellees that "based on [Givens'] allegations, there has been no actionable retaliation for exercise of a protected constitutional right." J.A. 159.

## II.

On de novo review of a dismissal pursuant to Rule 12(b)(6), we accept as true the facts pleaded in the complaint, viewing those facts and all reasonable inferences from them in the light most favorable to Givens. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted

8

under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see Matkari, 7 F.3d at 1134 n.4 (explaining that we may affirm only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim" (internal quotation marks omitted)).

Rule 8 of the Federal Rules of Civil Procedure establishes a standard of notice pleading which requires us to construe Givens' complaint so as to do "substantial justice." Fed. R. Civ. P. 8(f). See generally Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-14 (2002) (discussing pleading standard of Rule 8). But, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it." Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993); see Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998) ("[N]otice pleading requires generosity in interpreting a plaintiff's complaint. But generosity is not fantasy."). Similarly, the obligation to view the facts in the light most favorable to the plaintiff does not require the court to accept legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd., 213 F.3d 175, 180 (4th Cir. 2000). And, while Rule 8 does not require a plaintiff to "expound the facts, a plaintiff who does so is bound by such exposition." Bender, 159 F.3d at 192. We thus

9

are not bound to accept an inference drawn by the plaintiff when that inference is not supported by the facts pleaded in the complaint.  See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

My colleagues and I agree that Givens' constitutional claims relating to the assault depend upon whether the facts pleaded by Givens, if proved, would establish that O'Quinn and Mullins were acting under color of state law.  See ante, at 4; post, at 28; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  Am. Mfrs. Mut. Ins., 526 U.S. at 50 (internal quotation marks omitted).

The "under color of law" requirement of § 1983 is coextensive with the "state action" requirement of the Fourteenth Amendment.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 928-29, 935 (1982).  In discerning the line between state action and private action,

> [t]he judicial obligation is not only to preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct it could not control, but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.

Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (internal quotation marks, citation, & alterations

10

omitted). State action may be found only if there is a sufficient nexus between the challenged conduct and the state "that seemingly private behavior may be fairly treated as that of the State itself." Id. (internal quotation marks omitted). The existence of this nexus "is a matter of normative judgment, and the criteria lack rigid simplicity." Id.; see Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (noting that "[t]here is no specific formula for defining state action under this standard" (internal quotation marks omitted)). The determination is to be made based on the totality of the circumstances. See Rossignol, 316 F.3d at 523 n.1.

An actor's conduct is generally attributable to the state when it "occurs in the course of performing an actual or apparent duty of his office, or [when] the conduct is such that the actor could not have behaved in that way but for the authority of his office." Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995); see West v. Atkins, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." (internal quotation marks omitted)). Thus, a key consideration in determining whether a law enforcement officer's actions are attributable to the state is whether the "defendant's purportedly private actions are linked to events which

11

arose out of his official status." Rossignol, 316 F.3d at 524. In other words, "whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." Martinez, 54 F.3d at 986.

## A.

Judge Gregory tries mightily to force this case into the mold of Rossignol.[3] This attempt fails, however. In Rossignol, the defendants were sheriff's deputies who conducted a countywide mass purchase of the plaintiff's newspaper. See Rossignol, 316 F.3d at 519-20. A panel of this court concluded that the deputies' actions were attributable to the state because the deputies were motivated to suppress criticism of their official conduct. See id. at 524-25. Here, since Givens' complaint is devoid of any allegation of a similar motivation, my colleague creates out of whole cloth a reasonable inference that O'Quinn and Mullins intended to further a purported state interest in a fearful workforce. See post, at 33. Such speculation has no place in our review of the decision of the district court.

---

[3]Judge Luttig, concurring in the judgment, appears to be of the view that Rossignol so lowered the bar for finding state action that extensive analysis is unnecessary. As should be clear from the discussion in the text, I disagree with this assessment.

12

My colleague also takes care to note that the officers involved in Rossignol were "off-duty and out of uniform" at the time of the mass purchase. Post, at 29. While this is true, it is nevertheless quite clear that the officers carried an aura of authority that was critical to the finding of state action. First, there were in fact physical indications of the officers' status: one officer was wearing a sweatshirt with the word "Sheriff" emblazoned on it, and two others openly wore their service revolvers. See Rossignol, 316 F.3d at 520. Additionally, it appears that the officers used their well-known status as police officers to intimidate employees who might otherwise have opposed the mass purchase. See id. at 520-21 (recounting one clerk's testimony that the officers "had a real intimidating attitude, and made it real apparent that they could make my life here a living hell"; noting that several employees knew that the mass purchase was conducted by police officers (internal quotation marks & alterations omitted)). These facts were significant to the conclusion of the panel that the officers' conduct was state action. See id. at 526 (explaining that "the deputies' identities as state officers played a role at several points during the seizure" and noting the undoubted "effect of a police presence on a store owner or clerk").

Here, in contrast, there is no indication whatsoever that Givens perceived O'Quinn and Mullins to have any sort of authority

13

over him.  Although the point is not explicit, I understand my colleague to be of the view that the perceived authority of an out-of-uniform law enforcement officer vis-à-vis a civilian is comparable to that of an on-duty, uniformed officer vis-à-vis a co-worker.  There simply is no reason to equate those circumstances.  See Martinez, 54 F.3d at 988 n.6 (explaining that although a civilian is likely to be intimidated by the trappings of official status, "when the victim is himself a fellow officer ... it can generally be assumed that the aggressor's official trappings, without more, will not lead the victim to believe that the aggressor is acting with the imprimatur of the state"); Hughes v. Halifax County Sch. Bd., 855 F.2d 183, 186-87 (4th Cir. 1988) (concluding that assault on county employee by co-workers was not committed under color of state law because assailants' positions gave them no power over victim).

B.

I am also unpersuaded by Judge Gregory's heavy reliance on Givens' passing use of the term "hazing ritual" to describe the assault and other acts allegedly perpetrated against DOC employees. My colleague adopts a state law definition of the term "hazing" and asserts that "we can reasonably infer from Givens's description of the incident as a 'hazing' that he was alleging that defendants' acts were conducted as a ritual of initiation or in connection with

14

a condition of continued employment at Wallens Ridge." Post, at 31. Givens' use of the term "hazing ritual" simply will not bear the weight my colleague attributes to it. Indeed, the facts pled by Givens actually negate the existence of any common circumstance that might support an inference that the assault on Givens was part of a commonly performed "hazing ritual."[4] See Webster's Encyclopedic Unabridged Dictionary of the English Language 1661 (2001) (defining "ritual" in relevant part as "any practice or pattern of behavior regularly performed in a set manner").

The first incident alleged by Givens to support the "hazing ritual" claim concerns a female employee who was retaliated against for filing a sexual harassment complaint. Nothing in the complaint indicates that the assault against Givens was, or even might have been, a retaliatory act. The second alleged incident was an assault committed upon an employee who was about to depart for military service. Again, Givens has not pled any facts suggesting a commonality between this incident and the assault on him by O'Quinn and Mullins. Finally, Givens alleges that a corrections officer was forced, under threat of termination, to perform a "strip tease." J.A. 118. However, Givens has not alleged, and it would be speculative to suppose, that he submitted to the assault

---

[4]Givens admitted as much during the hearing concerning the motion to dismiss, acknowledging that the term "hazing" was perhaps the wrong word to describe the assaults on Givens and other employees. See J.A. 87.

15

by O'Quinn and Mullins under threat of termination. (In fact, Givens has alleged that he struggled to free himself.) In light of the significant differences between the other incidents themselves, and between those incidents and the assault on Givens, it is entirely unreasonable to infer that they were part of "organized ritualistic hazing." Post, at 32.

Setting the other incidents aside, I cannot endorse my colleague's conclusion that the facts pled by Givens establish that the assault "arose out of [O'Quinn and Mullins'] motivation to initiate Givens into his job at Wallens Ridge." Post, at 31-32. At no time in these proceedings has Givens ever asserted such a claim. And, the facts pled by Givens indicated that he had been a DOC employee for at least four years, and may have been at Wallens Ridge for a year, when the assault took place. Givens' complaint states that he "has been employed with the Department of Corrections for approximately six years, with the last two-three years at Wallens Ridge." J.A. 26. It is not clear to me whether this statement refers to Givens' employment status at the time the complaint was filed in December 2002 or at the time of the incident in December 2000. If the latter, my colleague's conclusion that the assault was an "initiation" of some sort is patently unsupportable. Even if the former, Givens' statement that he had been at Wallens Ridge "two-three years" provides no non-speculative

16

basis for a conclusion that the assault was an initiation performed upon a new co-worker.

## C.

Judge Gregory also finds support for his view that there is state action in the fact that O'Quinn and Mullins "used the prison's electronic locking mechanism" during the assault. Post, at 31. Givens likewise points to this fact and relies on DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989). In DeShaney, the Supreme Court held that the Due Process Clause does not require the state to protect its citizens from violence by private actors, see id. at 195-97, but noted that the state does have a duty imposed by the Due Process Clause to protect persons who are involuntarily in its custody, see id. at 198-99. The Court stated that due process protections might also apply to an individual who is in "a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." Id. at 201 n.9. Relying on this language, Givens argues that the assault occurred while he was in the functional custody of the state because O'Quinn and Mullins were aided by the physical structure of the prison, namely, the remote-locking door to the storage room. See Martinez, 54 F.3d at 984 (using the term "functional custody" to characterize situations analogous to incarceration or institutionalization).

17

The First Circuit addressed a similar issue in Martinez, a case discussed at length by the district court and the parties but not cited by my colleague. In Martinez, the plaintiff police officer was harassed by a fellow officer while both were on duty at the police station. See id. at 982. The incident culminated in the defendant accidentally shooting the plaintiff with his service revolver. See id. at 982-83. The court concluded that the shooting did not occur under color of state law because it arose from "a singularly personal frolic .... Though on duty and in uniform, [the defendant's] status as a police officer simply did not enter into his benighted harassment of his fellow officer." Id. at 987.[5]

The Martinez panel noted that one could argue that the shooting was made possible by the defendant's possession of a

---

[5]United States v. Tarpley, 945 F.2d 806 (5th Cir. 1991), provides a useful contrast to Martinez. Tarpley, a deputy sheriff, lured his wife's lover to his house and assaulted him:

> [Tarpley] inserted his service pistol in [the victim's] mouth. He told [the victim] that he was a sergeant on [sic] the police department, that he would and should kill [the victim], and that he could get away with it because he was a cop. He repeated "I'll kill you. I'm a cop. I can."

Tarpley, 945 F.2d at 808. The Fifth Circuit found these facts sufficient to support a jury finding that Tarpley acted under color of law for purposes of a conviction under 18 U.S.C.A. §§ 241, 242 (West 2000). The court noted that Tarpley "claimed to have special authority for his actions by virtue of his official status.... The presence of police and the air of official authority pervaded the entire incident." Tarpley, 945 F.2d at 809.

18

service revolver.  See id. at 987.  The court concluded, however, that mere facilitation of an assault by the possession of a state-issued firearm was not itself enough to create state action.  See id. at 987-88.  This logic applies to Givens' "functional custody" argument.  It is true that O'Quinn and Mullins were aided in their assault by the physical construct of the prison, including the remote-locking mechanism.  This fact is not sufficient to find state action, however, because it is in no way linked to the authority conferred on O'Quinn and Mullins as law enforcement officers.  See West, 487 U.S. at 49 (noting that finding of state action requires action "made possible only because the wrongdoer is clothed with the authority of state law" (emphasis added) (internal quotation marks omitted)); Barna v. City of Perth Amboy, 42 F.3d 809, 818 (3d Cir. 1994) (holding that "the unauthorized use of a police-issue nightstick is simply not enough to color [a] clearly personal family dispute with the imprimatur of state authority"); Delcambre v. Delcambre, 635 F.2d 407, 408 (5th Cir. Unit A Jan. 1981) (per curiam) (holding that an assault by an on-duty police officer on police station premises was not state action because "the altercation arose out of an argument over family and political matters and ... [the plaintiff] was neither arrested nor threatened with arrest").

In sum, I find no basis upon which to conclude that the assault on Givens was committed under color of state law. I therefore would affirm the district court.[6]

### III.

I would likewise affirm the dismissal of Givens' retaliation claim.[7] In order to state a valid claim for retaliation, Givens was required to allege facts indicating that (1) he engaged in protected speech, (2) he suffered an adverse employment action, and (3) his speech was a substantial or motivating factor in the adverse employment action. See Thomas v. City of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004). In order to satisfy the first element, Givens' grievance must have related to a matter of public concern. See Huang v. Bd. of Governors, 902 F.2d 1134, 1140 (4th Cir. 1990).

---

[6]Givens also asserted a claim for supervisory liability against Lieutenant Charles Janeway and other supervisors. See Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984) (noting that a supervisor may be held liable for constitutional injuries inflicted by subordinates when "supervisory indifference or tacit authorization of subordinates' misconduct" is "a causative factor in the constitutional injuries they inflict" on others). In the absence of a constitutional violation by O'Quinn and Mullins, this claim necessarily fails.

[7]Judge Luttig states that he agrees with Judge Gregory that there is state action but that he would affirm the dismissal of the retaliation claim "[f]or the reasons stated by the district court." Ante, at 4. As I have already noted, however, the rejection of the retaliation claim by the district court rested at least in part on its conclusion that the assault was not committed under color of state law.

20

To determine whether speech involves a matter of public concern, we examine the content, form, and context of the speech at issue in light of the entire record. See Connick v. Myers, 461 U.S. 138, 147-48 (1983). Speech involves a matter of public concern when it relates to an issue "of political, social, or other concern to a community." Id. at 146. The public-concern inquiry centers on whether "the public or the community is likely to be truly concerned with or interested in the particular expression." Arvinger v. Mayor of Baltimore, 862 F.2d 75, 79 (4th Cir. 1988) (internal quotation marks omitted).

Here, Givens' speech consisted of an internal grievance complaining about the assault committed by O'Quinn and Mullins. "[I]t is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern." Huang, 902 F.2d at 1140. Givens' complaint about the assault is undoubtedly quite important to him, but in the absence of any state action during the assault, the fact that he was assaulted by fellow employees on a personal frolic is not a matter of public concern. See Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir.) (noting that "complaints about conditions of employment ... are not matters of public concern" (internal quotation marks omitted)), cert. denied, 125 S. Ct. 49, 68 (2004); cf. Robinson v. Balog, 160 F.3d 183, 189-90 (4th Cir. 1998) ("Every public employee's job by definition

21

affects 'the public,' but every public employee's grievance is not thereby of public concern.").

## IV.

For the reasons set forth above, I concur in the judgment in part and dissent in part.

GREGORY, Circuit Judge, concurring in the judgment in part and dissenting in part:

This matter arises from a sexual assault during a "hazing ritual" at Wallens Ridge State Prison. Plaintiff Terry W. Givens, ("Givens") a state corrections officer, appeals from the district court's order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), his suit filed against several defendants.[1] Givens alleges that defendants' individual and collective conduct, in committing a sexual assault and subsequent acts of retaliation, violated his rights under 42 U.S.C. § 1983 ("§ 1983") and Virginia common law. The district court held that the alleged hazing incident did not constitute state action and as a matter of law, Givens's retaliation claim was not actionable under § 1983. Because we find that, at this stage of the proceedings, Givens has made a colorable claim under § 1983, I concur in part; however, I disagree with the dismissal of Givens's retaliation claim.

---

[1]Givens sued the following corrections officers, supervisors, and administrators individually: Corrections Officer R. Brooks, Sergeant Jerry O'Quinn, Sergeant Mike Mullins, Lieutenant Bill Reynolds, Lieutenant Charles Janeway, Investigator Frank Wilkins, Major Tim Yates, Warden Stan Young, Director Richard Young (Western District Department of Corrections), and Director Ron Angelone (Department of Corrections).

23

Terry W. Givens is a corrections officer at Wallens Ridge State Prison ("Wallens Ridge"), a super-maximum security facility[2] located in Wise County, Virginia. Givens has been employed with the Virginia Department of Corrections for approximately six years with the last two or more years at Wallens Ridge. The hazing incident occurred on December 22, 2000, at approximately 3:00 a.m., during Givens's 6:00 p.m. to 6:00 a.m. shift. Givens entered the office to review some paperwork. Almost immediately, two fellow employees at Wallens Ridge, Sergeant Jerry O'Quinn ("Sergeant O'Quinn") and Sergeant Mike Mullins ("Sergeant Mullins"), grabbed Givens and took him by force from the office to an equipment room. Sergeants "Mullins and O'Quinn and/or other defendants [gave] the employee stationed at Central (which work station controls operation of the electronically controlled doors) instructions not to open the exit door." J.A. 116-17. Thus, Givens stated, he "had no means to escape due to the electronic door and the instruction given to the control panel operator not to open the door under any circumstances." Id. at 117.

---

[2]This super-maximum security prison is constructed such that "no employee of the prison can move about the prison without heavy metal electronic doors being opened by another employee who operates the control panel. All electronic doors are placed within short distances of each other; and one must be closed prior [to] the next one being opened for passage by an employee. No two consecutive electronic doors are permitted to be opened at the same time at any time." J.A. 115.

Sergeants O'Quinn and Mullins handcuffed Givens and put leg irons on his ankles. They then pulled down Givens's pants against his will, took hold of his genitals and "duct taped" them to his leg, and took photographs of him.[3] Captain Charles Janeway, Givens's indirect supervisor, observed the hazing incident, including Givens's protests and struggles, but did nothing to stop the sexual assault nor did he report the actions of Sergeants O'Quinn and Mullins to his superiors. According to Givens, Sergeant O'Quinn and/or Sergeant Mullins showed the photographs of him to an unknown number of Wallens Ridge employees. Givens asserted that Ronald Angelone, Department of Corrections Director ("Director Angelone"), initiated a "cover-up" of the incident by ordering the photographs destroyed. Givens further asserted that Ronald Young, the Department of Corrections Western Regional Director ("Director R. Young"), and Warden Stan Young, acted in furtherance of the "cover-up."

Givens filed this lawsuit against defendants in federal district court. Defendants moved pursuant to Rule 12(b)(6) to dismiss Givens's Second Amended Complaint for failure to state a claim. Givens's Second Amended Complaint, similar to his previous

---

[3]Givens's complaint states that O'Quinn and Mullins were Sergeants, thus defendants were presumably senior to Givens, who is described as a corrections officer -- without rank. This simple fact undermines Judge Wilkins's far reaching conclusion that Givens did not perceive defendants to have authority over him. See ante at 9.

complaints, alleged he was subjected to a hazing incident by fellow corrections officers. Specifically, he alleged that defendants violated § 1983 by depriving him of his Fourth Amendment right against seizure and his Fourteenth Amendment right to due process. In addition, Givens asserted that Director Angelone, Director R. Young, and Warden Stan Young were also liable under § 1983 for the hazing incident. Givens also sought relief for violations of state tort law.

Defendants admitted that the hazing incident occurred and that the officers involved had been disciplined for their private acts; however, they asserted that Givens could not establish a § 1983 claim because there was neither state action nor was there any conduct under color of state law. The district court granted defendants' Rule 12(b)(6) motion and dismissed all of Givens's claims in his Second Amended Complaint, except a claim for compensatory and punitive damages. The district court then granted him leave to file a third amended complaint solely to set forth his retaliation claim against certain defendants.

In Givens's Third Amended Complaint, he alleged that defendants retaliated against him for filing a report of the sexual assault and complaining to management about other "hazing rituals" that have occurred at Wallens Ridge. Givens asserted that defendants retaliated by conducting unfounded investigations and fabricating charges against him, in violation of § 1983. Defendants filed

26

motions to dismiss Givens's Third Amended Complaint for failure to state a claim. The district court held that there was no actionable retaliation for exercise of a protected constitutional right and dismissed Givens's Third Amended Complaint. Givens now files this appeal.

II.

This court reviews a Rule 12(b)(6) dismissal de novo. See Stuart Circle Hospital Corp. v. Aetna Health Management, 995 F.2d 500 (4th Cir. 1993). As required, "we assume the facts alleged in the relevant pleadings to be true, and we draw all reasonable inferences therefrom." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 591 (4th Cir. 2004). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Such motions "should be granted only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). Indeed, "[a] Rule 12(b)(6) motion to dismiss should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC, 385 F.3d 836, 841 (4th Cir. 2004) (internal citations omitted).

III.

On appeal, Givens contends that the district court erred in finding that defendants' hazing acts did not constitute conduct under color of state law and that there had been no actionable retaliation for exercise of a protected constitutional right. I address these contentions in turn.

A.

To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a constitutional right. Dowe v. Total Action Against Poverty, 145 F.3d 653, 658 (4th Cir. 1998). In this case, there is no question that if defendants acted under color of state law, they violated Givens's constitutional rights. As defendants aptly note in their brief, a seizure triggering the Fourth Amendment's protection occurs only when governmental actors have, "by means of physical force or show of authority . . . in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968). It is undisputed that defendants, Sergeants O'Quinn and Mullins, state corrections officers, unlawfully and intentionally restrained Givens's liberty. Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991) (holding that a "seizure" under the Fourth Amendment occurs when "one is the intended object of a physical restraint by

an agent of the state"). Here, Givens has alleged a clear deprivation of a constitutional right.

The question in this appeal is whether Givens has pled facts, which, if proved, would show the defendants to be state actors for purposes of § 1983. Recently, in <u>Rossignol v. Voorhaar</u>, this court set forth the criteria for determining when purportedly private conduct actually occurs "under color of state law." 316 F.3d 516 (4th Cir. 2003). We find our holding in <u>Rossignol</u> to be applicable and controlling in this case. In <u>Rossignol</u>, the Sheriff's position was an elected one, and the local paper was highly critical of the incumbent Sheriff. <u>Id.</u> at 519-20. On election-day, several off-duty and out of uniform County Sheriff deputies purchased every copy of the critical newspaper. <u>Id.</u> In <u>Rossignol</u> we concluded that the deputies' actions in suppressing the distribution of the election-day paper were perpetrated under color of state law. <u>Id.</u> at 523.

In <u>Rossignol</u> we recognized that § 1983 "includes within its scope apparently private actions which have a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'" <u>Id.</u> (quoting <u>Jackson Metro. Edison Co.</u>, 419 U.S. 345, 351 (1974)).[4] However, "the Supreme Court has not opted for an objective or subjective test, but simply for a look at the totality of

_____

[4]Accordingly, "if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, it also constitutes action 'under color of state law' for the purposes of § 1983." <u>Id.</u> at 523 n.1.

29

circumstances that might bear on the question of the nexus between the challenged action and the state." Id. at 523 n.1. In reaching our decision in Rossignol, we concluded that "what is fairly attributed to the State 'is a matter of normative judgment, and the criteria lack rigid simplicity.'" Id. at 523 (internal citations omitted). Consequently, we held in Rossignol that "where the sole intention of a public official is to suppress speech critical of his conduct of official duties or fitness for public office, his actions are more fairly attributable to the state." Id. at 524. Further, after looking to the totality of the circumstances, we found that the deputies' conduct bore a "sufficiently close nexus with the state to be fairly treated" as actions under the color of state law or as state action, pursuant to § 1983. Id. at 525.

Because this is a motion to dismiss, we look to Givens's complaints to determine if there is a "sufficiently close nexus" between defendants' actions and the state to allege that their conduct was "under color of state law."[5] In his complaints, Givens described the sexual assault incident in question as a "hazing ritual." "Hazing" is defined as "to persecute or harass with meaningless, difficult, or humiliating tasks; to initiate . . . by exacting humiliating performances from or playing rough practical

[5]The Federal Rules create a liberal system of "notice" pleading in which a complaint is required by Fed. R. Civ. P. 8 to be a short and plain statement of the case showing that the pleader is entitled to relief. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

30

jokes upon." The American Heritage Dictionary of the English Language 605 (1976). Further, the Virginia Code defines "hazing" as:

> [T]o recklessly or intentionally endanger the health or safety of a student or students or to inflict bodily injury on a student or students in connection with or for the purpose of initiation, admission into or affiliation with or as a condition for continued membership in a club, organization, association, fraternity, sorority, or student body regardless of whether the student or students so endangered or injured participated voluntarily in the relevant activity.

Va. Code § 18.2-56.[6]

Although Wallens Ridge is not a college or university campus, we can reasonably infer from Givens's description of the incident as a "hazing" that he was alleging that defendants' acts were conducted as a ritual of initiation or in connection with a condition of continued employment at Wallens Ridge. According to Givens, defendants acted while on duty, in uniform, and used the prison's electronic locking mechanism to accomplish the hazing ritual. These facts alone are not dispositive, however they do support his claim that defendants' conduct was under color of state law. Rossignol, 316 F.3d at 526 ("[Defendants'] status as sheriff's deputies enabled them to execute their scheme in a manner that private citizens never could have."). Assuming as true all facts pled by Givens, defendants' acts of hazing arose out of their motivation to initiate Givens into his job at Wallens Ridge.

---

[6] In deciding a 12(b)(6) motion to dismiss, we may refer to matters of public record. Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

31

Rossignol, 316 F.3d at 523 (finding that the requisite nexus between defendants' public office and their actions during the seizure arose initially out of their censorial motivation).

Givens also alleged that defendants not only hazed him, but "that similar actions as those taken against [him] had previously been taken against other Wallens Ridge . . . employees," with the knowledge of prison officials.[7]  J.A. 28.  In addition, Givens listed specific instances of hazing at Wallens Ridge: (1) a female employee being videotaped while she was using the toilet; (2) a corrections officer being stripped and tied naked to a flagpole during the night shift and left for the day shift to see the following morning; and (3) a corrections officer being forced to perform a striptease and to dance naked for other officers.  Givens inclusion of these prior sexually deviant acts in his complaints support his claim that organized ritualistic hazing was occurring at Wallens Ridge.[8]

---

[7]I disagree with Judge Wilkins's assertion that Givens has not pled a commonality between the incidents.  Ante at 15.  My colleague overlooks Givens's allegation that his assault, like the previous incidents of assaults, were of a sexual nature and constituted "a kind of hazing ritual" at Wallens Ridge.  J.A. 57, 118.

[8]Judge Wilkins might make a good point, if we were reviewing a grant of a motion for summary judgment, when he says that there is a significant difference between this incident and the other incidents, thus "it is entirely unreasonable to infer that they were part of 'organized ritualistic hazing.'"  Ante at 16.  However, because we are testing only the sufficiency of the complaint, we are thus permitted to make a reasonable inference from Givens's use of the phrase "hazing ritual."

As in <u>Rossignol</u>, defendants' actions in this case likely arose "out of public, not personal, circumstances." <u>Rossignol</u>, 316 F.3d at 524. Although initiating employees into their prison jobs may not be an official duty, we held in <u>Rossignol</u> that when the intention of the state official is to accomplish a state interest, those acts are more fairly attributable to the state. <u>Id.</u> Given the facts recited by Givens,[9] we can reasonably infer that defendants' intention was to accomplish the state interest of intimidating and controlling employees through hazing them, insuring their loyalty and secrecy in the prison environment. Givens's allegations and the reasonable inferences drawn therefrom, support the claim that there is a state prison ritual of subjecting employees to intimidation, sexual assault, and other sexually deviant behavior to either initiate them into their jobs or as a condition of continued employment. Thus, Givens's complaint is well within the boundaries of <u>Rossignol</u>.

B.

I dissent from the court's decision to affirm the district court's dismissal of Givens's retaliation claim. Following the

---

[9]I can not agree with Judge Wilkins's implication that Givens, in his complaint, must set out a full motive for defendants' actions to survive a 12(b)(6) motion. <u>See</u> <u>ante</u> at 12. <u>Rossignol</u>, was on appeal from a grant of a motion for summary judgment -- after full discovery; while Givens has been denied the benefit of any discovery.

hazing incident, Givens submitted an incident report to Major Tim Yates ("Major Yates"), a Wallens Ridge supervisor. Givens contended that Major Yates almost immediately ordered an internal investigation of Givens to develop a reason to justify terminating him. Givens claimed that defendants, Lieutenant Reynolds, Major Tim Yates, and Warden Stan Young, instructed Corrections Officer R. Brooks ("Brooks"), a female officer who reports to Givens, to make false sexual assault charges against him. According to Givens, Brooks continued to harass him and bragged that "she [was] conducting her own personal investigation of him." J.A. 121. Givens further alleged that "all defendants engaged in, and conspired to engage in, retaliation against him for filling out an incident report and complaining to management about the violations which had taken place against him." Id. at 126.

As we concluded in American Civil Liberties Union, Inc. v. Wicomico County, "retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." 999 F.2d 780, 785 (4th Cir. 1993). A plaintiff must demonstrate that he suffered some sort of adversity in response to his exercise of protected rights. Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990) (plaintiff asserting First Amendment whistle-blower claim under §1983 "must

34

show that alleged retaliatory action deprived him of some valuable benefit").

Generally, employees do not have the right under the First Amendment to file grievances or internal incident reports concerning their own employment conditions. Huang, 902 F.2d 1134, 1140 ("[I]t is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern."). However, a plaintiff asserting "whistle-blower" type claims under § 1983 whose expressions relate to a matter of public concern and are alleged to have provoked retaliatory action are afforded First Amendment protection. Connick v. Myers, 461 U.S. 138, 146-51 (1983) (holding that First Amendment protection attaches only if: (1) the expressions relate to a matter of public concern; and (2) the employee's interest in the speech outweighs the employer's interest in "effective and efficient fulfillment of its responsibilities to the public"). Whether an expression involves a matter of public concern is a question of law. Id. at 148 n.7. Additionally, the Supreme Court concluded that the question of whether "an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-148.

The retaliation Givens alleged started after he filed an incident report and began complaining to his superiors about

similar acts of ritual hazing.  The incidents that Givens described are particularly serious and disturbing, because they occurred inside a super-maximum security state prison, considering the importance of such an institution and the community trust placed in it.  Connick, 461 U.S. at 148 (concluding that because the speech did "not seek to bring to light actual or potential wrongdoing or breach of public trust" it was not of public concern).

Givens alleged that the policymaking officials at Wallens Ridge knew that other employees had also been subjected to hazing rituals involving sexual assault and humiliation.  He also averred that high level prison officials attempted to "cover-up" the hazing incident and force him to leave his employment, in order to stop him from filing suit and exposing the systematic hazing occurring at Wallens Ridge.  Kostishak v. Mannes, No. 97-1500, 1998 U.S. App. LEXIS 7811, at *15-16 (4th Cir. 1998) ("[S]peech for which [plaintiff] alleges he is being retaliated against is much more than a grievance about his own employment: . . . [Plaintiff] has alleged that he was terminated in retaliation for his intent to act as a witness in administrative or judicial proceedings.  Such speech clearly relates to matters of public concern.").  Although Givens did not directly cite the First Amendment,[10] the language Givens used in his retaliation claim allows this court to draw the

_____

[10]However, Givens does allege a violation of the Fourteenth Amendment, which makes the protection of the right to speech under the Constitution applicable to the state.

36

reasonable inference that he was attempting to expose the ritual hazing at Wallens Ridge. Thus, Givens's complaint states a claim for "whistle-blower" retaliation invoking First Amendment protection.

Lastly, "[i]t should be noted that, if initiated for an illegal purpose, [an] investigation itself is actionable; the plaintiff[] need prove no further adverse employment action." Williams v. Hansen, 326 F.3d 569, 585 (4th Cir. 2003); Hetzel v. County of Prince William, 89 F.3d 169, 171 (4th Cir. 1996) (noting that an internal affairs investigation itself constitutes "adverse employment action").[11] Thus, Givens's allegation that the unfounded investigations instituted by defendants were in an effort to silence him about a matter of public concern, constitutes an actionable claim of retaliation under § 1983. Rakovich v. Wade, 819 F.2d 1393, 1397 (7th Cir. 1987) (holding that investigation undertaken in retaliation for exercise of constitutionally protected rights is actionable under § 1983). Accordingly, I disagree with the district court's finding that Givens has not alleged an actionable claim of retaliation under § 1983 and my colleagues decision to affirm the district court's ruling.

---

[11] See also Allen v. Iranon, 283 F.3d 1070, 1076 (9th Cir. 2002) (discussing internal affairs investigations as among "adverse employment actions" that could ground § 1983 liability).

IV.

For the reasons stated herein, I concur in the judgment to reverse the district court's decision to dismiss Givens's § 1983 claim based on a finding of no state action as a matter of law. However, I dissent from this court's decision to affirm the dismissal of Givens's retaliation claim.