**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-1077**

———————

In Re:  HILARY K. JOHNSON,

                                        Appellant.

--------------------------------------

TERRY W. GIVENS,

                                        Plaintiff,

        versus

JERRY O'QUINN; R. BROOKS; BILL REYNOLDS; MIKE
MULLINS; CHARLES JANEWAY; FRANK WILKINS; TIM
YATES; STAN YOUNG; RICHARD YOUNG; RONALD J.
ANGELONE; JOEY O'QUINN,

                                        Defendants.

———————

**No. 06-1088**

———————

In Re:  HILARY K. JOHNSON,

                                        Appellant.

--------------------------------------

SAMANTHA STILLWILL,

                                        Plaintiff,

        versus

RICHLANDS POLICE DEPARTMENT; TOWN OF
RICHLANDS,

                                        Defendants.

_____

Appeals from the United States District Court for the Western
District of Virginia, at Big Stone Gap and Abingdon.  James P.
Jones, Chief District Judge.  (2:02-cv-00214-jpj; 1:04-cv-00125-
jpj)

_____

Submitted:  May 12, 2006                    Decided:  June 1, 2006

_____

Before NIEMEYER and KING, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Hilary K. Johnson, Abingdon, Virginia, Appellant Pro Se.

_____

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

_____

PER CURIAM:

Hilary K. Johnson, an attorney practicing in the Western District of Virginia, was sanctioned by the district court under Federal Rule of Civil Procedure 11 and ordered to pay $250 in each of two separate cases for filing frivolous motions under 28 U.S.C. §§ 144 and 455 to recuse the district judge, Chief Judge James Jones. Following two hearings, one in which Johnson presented her grounds for the motions and the other in which she attempted to show cause why sanctions should not be imposed, the district court concluded that the motions were without a factual basis and that "no reasonable attorney would have believed that the motions were legally sufficient."

On appeal, Johnson contends that there was a "legitimate argument that the recusal motion was supported by existing law and, therefore, [was] not sanctionable. However, even if the motion had no reasonable chances of success, it was not so frivolous as to invoke liability for Rule 11 sanctions." Johnson rested her motions on two arguments. First,

> Judge Jones has evinced severe bias against [Johnson] that is of a continuing and personal nature (which still continues today). This deeply grounded animosity toward appellant could well have affected Judge Jones' decisions in regard to appellant's clients, Samantha Stillwell and Terry Givens. Hence, Judge Jones' bias against appellant could reasonably be imputed as improper bias against a party.

And second,

-3-

> Relatedly, what has appeared, based on extra judicial sources (to-wit: Judge Jones' record of decisions in employment discrimination and civil rights cases versus the record of the remaining three judge[s] in the Western District (Judges Turk, Wilson and Williams), as well as his comments and apparent demeanor from the bench during previous oral arguments in other cases filed by appellant), Judge Jones' bias against plaintiffs in employment discrimination and civil rights cases as a whole amounts to bias within the meaning of Section 455.

We have carefully reviewed the entire record and considered Johnson's arguments in full, as well as the district court's detailed opinion, and for the reasons that follow, we conclude that the district court did not abuse its discretion in imposing sanctions and that the sanctions were not unreasonable. We therefore affirm.

I

Representing Terry Givens, Johnson commenced one of the actions before us on December 17, 2002, naming as defendants two of Givens' coworkers at the Wallens Ridge State Prison, as well as other employees of the Virginia Department of Corrections, and asserting that Givens had been assaulted in violation of 42 U.S.C. § 1983 and state law. The case was assigned to Chief Judge Jones, who dismissed the case on the ground that state action was not involved in the coworkers' assault. After this court reversed and remanded the case, see Givens v. O'Quinn, 121 Fed. Appx. 984 (4th Cir. 2005), Judge Jones scheduled the case for trial.

-4-

Representing Samantha Stillwell, Johnson commenced the other action before us on November 1, 2004, against the Richlands Police Department and the Town of Richlands, alleging that Stillwell had been discriminated against on account of her sex, in violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964. That case too was assigned to Chief Judge Jones.

While both cases were ongoing, Johnson filed identical motions in each case on July 19, 2005, to recuse Judge Jones, explaining that she believed that Judge Jones could not be impartial in either case and therefore must recuse himself under 28 U.S.C. §§ 144 and 455. In support of her motions, Johnson advanced no facts or incidents relating to bias or impartiality in these two cases. Indeed, opposing counsel in the Givens case observed at the hearing:

> I just wanted to note there's nothing specific in the Givens case that would indicate a need for recusal. There's no such indication. I'd add for the record that every other case we've appeared before you has been just the opposite. I'm shocked by this motion. If the motion is granted, you would have to recuse yourself in every case, which is absurd, frankly.

Opposing counsel in the Stillwell case argued likewise, stating, "As we pointed out . . . in the response to the motion, there's really been nothing brought up about Mrs. Stillwell's particular case. All of these things are about what may or may not have happened in the past." When these observations were brought to Johnson's attention, Johnson noted only that in the Givens case,

Judge Jones had referred to the conduct alleged by Givens as "horse play."

Rather than resting on actions by Judge Jones in these cases, Johnson's arguments rely on several general accusations formed over years of practice in the Western District of Virginia. As Johnson explained to the district court,

> [W]hen you [Judge Jones] first came on the bench, I was extremely pleased, but it just seems like in the past couple of years that I don't know if I've done something to offend the court, or what, but your questioning, other attorneys laugh afterwards, "Boy, he sure doesn't like you, does he?"

Johnson also observed that in civil rights cases and employment discrimination cases, "I don't see how the court can have any feeling for these plaintiffs, and I understand there's a law obviously, but your interpretation of the law, it seems to me, has absolutely, it's like these people just don't matter." When asked for particulars, Johnson explained, "I feel like you've been insulting to me in the past as I stand up here, and the way you questioned me, and the tone in your voice, and it's like, 'Ms. Johnson, you're a big joke,' and my clients are a big joke. To me I'm insulted by the way you've talked to me in the past, but you're the judge, so the proper way in which to bring this matter up is to file a motion to recuse."

When pressed yet further for specifics, Johnson referred to a few cases, the most emphasized (and perhaps relevant) of which involved an exchange during argument in which the court responded,

as Johnson recalled, with insensitive sarcasm.  As Johnson remembered the incident, when she observed that the defendant in that case "talked to her [client's] breasts," Judge Jones allegedly inquired, "Ms. Johnson, how do you talk to a woman's breasts?" Johnson took the response as one demonstrating "total disdain and contempt" for civil rights plaintiffs.[*]

--------

[*]The transcript of the incident, however, reveals a substantially different exchange, revealing only questions by the court for clarification:

| | |
|---|---|
| Ms. Johnson: | Your Honor, under Title VII the plaintiff is required to show by, under an objective standard that the conduct involved sexual harassment, in this particular case on the average of three to four times a week. |
| | And I think if anybody asks any woman out there, I think the response would be the same, a man comes up to a woman and has a conversation with her breasts, and the conversation does not involve looking at the person, doesn't involve looking at anything but her breasts, and I think anybody, any woman would tell you that if she has a conversation with a man for more than a minute or two with a man talking to her breasts the whole time -- |
| The Court: | Wait a minute.  You mean looking at her breasts? |
| Ms. Johnson: | Correct, correct.  That's right.  And I think -- |
| The Court: | You mean when he, when she, she says that when he would talk to her, he would, his eyes would be cast down toward her breasts? |
| Ms. Johnson: | And she felt like he was talking to her |

-7-

At the hearing, other than the few incidents of the type described, Johnson repeatedly argued only generalities, stating that her motions were grounded on her beliefs and feelings about Judge Jones and his alleged bias, which in turn were based on his rulings against her, his demeanor in court proceedings, and the opinions of unidentified attorneys. Her principal support for Judge Jones' bias came from a "statistical analysis" of "employment discrimination" cases decided by Judge Jones. But even with this statistical analysis, Johnson admitted that all of the reasons for her motions relate to Judge Jones' actions in discharging his judicial duties in court, not to any extra-judicial activities or statements.

When questioned about the statistical analysis, Johnson stated she looked at 226 cases from the Western District of Virginia that a website labeled "employment discrimination" cases. Without giving an explanation of her criteria, she excluded some cases from the sample set. She then labeled each decision by Judge Jones as either "positive" or "negative," without explaining the basis for either label, and compared how the resulting figure related to the three other judges in the district. Johnson concluded from this analysis that Judge Jones was "20 percent [for civil rights

breasts. If this were to occur one time, I think a normal woman would say she felt uncomfortable and an instinctive reaction would be to cover her chest while the man is talking.

plaintiffs] versus 27 percent for Judge Wilson . . . . Judge Williams about half and half, and [Judge] Turk 36 percent."

As for her evidence from other attorneys, Johnson stated that they were simply random conversations that she had had with other attorneys, whom she refused to name, but who had been before Judge Jones.

A couple of the few incidents recalled by Johnson supposedly demonstrate that Judge Jones has treated her unfairly because she represents plaintiffs. One involved the fact that the court prematurely ordered dismissal of a case for settlement when the settlement had been announced unilaterally by her opposing party but not yet completed. And the other involved an e-mail sent by the clerk of the district court to Johnson in which the clerk wrote, "Please note that the amended complaint that you filed in the above case did not contain your electronic signature. Please check these documents before you submit them for filing. Continued incorrect filings may result in your privileges being revoked by the Court." Johnson assumed that the clerk issued the letter at the direction of Judge Jones, although she conceded that she had no basis for this conclusion, and nothing in the records suggests that any judge was behind the clerk's communication.

From the district court's order concluding that Johnson's motions were frivolous and imposing sanctions, Johnson filed these appeals, which we have consolidated.

Johnson does not challenge the district court's denial of her motions to recuse Judge Jones, but only the court's decision to impose sanctions under Rule 11.

Under Rule 11, by presenting a written motion to the court, an attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the motion is, among other things, "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and its "allegations and other factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). If a court believes that the attorney has failed in this task, it can, on its own, order the attorney to the show cause why Rule 11(b) was not violated by the motion, Fed. R. Civ. P. 11(c)(1)(B), and ultimately can impose a sanction calibrated to deter repetition of such conduct, Fed. R. Civ. P. 11(c)(2). "[A]ll aspects of a district court's Rule 11 determination" are reviewed for abuse of discretion. Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990); see also Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 150 (4th Cir. 2002). At bottom, a court considering Rule 11 sanctions must differentiate between a losing argument or position, which is not sanctionable, and a frivolous one, which is. "We have recognized that maintaining a legal position to a court is only

sanctionable when, in 'applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" Hunter, 281 F.3d at 153 (quoting In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998)).

We agree with the district court that the allegations to support Johnson's motions lack both factual and legal support. With respect to the facts on which Johnson relied, the district court carefully demonstrated how Johnson incorrectly recalled the events that she claimed justified her belief that Judge Jones was personally prejudiced against her and how she also relied on irrelevant events. It is apparent that Johnson proceeded merely from a subjective perception and corrupted memory and did not examine any of the court records or transcripts that would have corrected her mistaken recollections. Furthermore, Johnson conceded twice during the hearings that she formed her "understanding" of court procedures without investigation, but rather derived her understandings from her perception that she was being treated unfairly. We conclude that Johnson's "knowledge, information, and belief" was not the product of "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

Johnson's conclusions that Judge Jones is personally biased against civil rights plaintiffs are likewise unconnected to fact and legally unsupportable. Johnson relied heavily on her

"statistical analysis" of civil rights cases adjudicated in the Western District of Virginia. But this analysis was only superficially "statistical" and even misleading. She apparently collected a class of cases based on a single docket sheet classification, modified that class by arbitrarily excluding some cases for an unexplained reason, and applied to those cases a "positive" or "negative" label without defining the criteria other than that she liked or disliked the result. Thus, instead of conducting a scientific collection and analysis of the data, which might be replicated and refuted, Johnson merely added up insignificant numbers and performed simple division.

Johnson also relied on informal opinions of unnamed lawyers and the fact that Judge Jones, prior to his appointment as a district judge in 1996, represented civil rights defendants. But such reference to lawyers' opinions is no more factual than would be schoolyard gossip about a teacher, and the allusion to Judge Jones' prior practice can support no inference that Judge Jones is incapable of judging cases impartially.

In the totality of these circumstances, we conclude that the district court did not abuse its discretion in imposing sanctions under Rule 11 and that the sanctions are not unreasonable. We dispense with oral argument because the facts and legal contentions

are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED